IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PHILIP J. CHARVAT on behalf of himself and others similarly situated, | : : : | |
| Plaintiff, | : : | Case No.: 2:14-cv-02205 |
| v. | : : : | Judge George C. Smith |
| NATIONAL HOLDINGS CORPORATION d/b/a NATIONAL SECURITIES | : : : : | Magistrate Judge Elizabeth Preston Deavers |
| Defendant. _____ | : / | |
| PHILIP J. CHARVAT on behalf of himself and others similarly situated, | : : : | |
| Plaintiff, | : : | Case No.: 2:16-cv-00120 |
| v. | : : : | Judge George C. Smith |
| SHAMPAN LAMPORT, LLC | : : | Magistrate Judge Elizabeth Preston Deavers |
| Defendant. _____ | : : / | |

**PLAINTIFF'S CONSOLIDATED CLASS ACTION COMPLAINT**

**Preliminary Statement**

1. Plaintiff Philip Charvat ("Mr. Charvat") ("Plaintiff") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act, 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. In violation of the TCPA, Shampan Lamport, LLC ("Shampan Lamport") and other third parties that National Holdings Corporation d/b/a National Securities ("National Securities") hired to generate new business made telemarketing calls to a residential telephone number Mr. Charvat had registered on the National Do Not Call Registry for the purposes of advertising National Securities goods and services.

3. The Plaintiff never consented to receive these calls, which were placed to him for telemarketing purposes. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, the Plaintiff brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of National Securities.

4. A class action is the best means of obtaining redress for the Defendants' wide scale illegal telemarketing, and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5. Plaintiff Philip Charvat is a resident of the state of Ohio in this District.

6. Defendant Shampan Lamport, LLC is a New York limited liability company that has its principal office in Nassau county.

7. Defendant National Holdings Corporation is a Delaware corporation that has its principal office in New York City.

**Jurisdiction & Venue**

8. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

2

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant is a resident of this district. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District as the telemarketing calls that gave rise to the Plaintiff's claims occurred here.

### The Telephone Consumer Protection Act

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

11. The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire to not receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).  A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

12. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry.  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

13. A person whose number is on the Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages and injunctive relief.  47 U.S.C. § 227(c)(5).

14. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. §

64.1200(c)(2)(ii).  That agreement must also include the telephone number to which the calls may be placed.  *Id.*

15. The TCPA also provides a private right of action for individuals that receive two or more telephone calls within a 12-month period to a residential telephone line in violation of either the internal or National do-not-call registry. § 227(c).

## Factual Allegations

### *Shampan Lamport places telemarketing calls to the Plaintiff offering National Securities goods and services*

16. Mr. Charvat's home telephone number, (614) 895-XXXX, has been on the National Do Not Call Registry since 2011.

17. On August 28, September 5, September 6, September 7, and September 19, 2012, the Plaintiff received telephone calls from telemarketing representative(s) including Mr. Corbin Godfrey[1] stating that they were calling from National Securities.

18. After commencement of this lawsuit, National Securities identified a third party that it had hired that had physically dialed the telemarketing calls.

19. This third party was the co-defendant  Lamp Lamport.

20. After receiving the first three calls, the Plaintiff wrote a letter to Jonathan Rich, National Securities Executive Vice President, informing him about the receipt of the unwanted telemarketing calls.

21. In response, Mr. Charvat received a letter from Alfred Scerbo[2], the Supervision Officer for National Securities, who apologized for the inconvenience and placed Mr. Charvat's telephone number on National Securities' Internal Do Not Call List.

---

[1] Per FINRA, Corbin William Godfrey, CRD # 6102122, was employed by National Securities Corp., CRD # 7569.

4

22.     Unfortunately, the calls continued after National Securities had placed Mr. Charvat on their Internal Do Not Call List.

23.     On October 25, 2012, February 27, 2013, November 1, 2013, and December 5, 2013 Mr. Charvat received more telemarketing calls from National Securities attempting to offer their goods and services.  At least two of these telemarketing calls were made by "Ed Turner"[3], an agent of National Securities.  The latter two of these calls are believed to have been made by Eric Scheetz[4].

### *Sharpco International places telemarketing calls to the Plaintiff offering National Securities goods and services*

24.     In fact, the filing of this lawsuit did not stop National Securities offices from contacting the Plaintiff.

25.     Sharpco International, Inc. ("Sharpco") was a company used to maintain the Red Bank, NJ branch of National Securities.

26.     National Securities approved a business plan that the Red Bank, NJ call center would use telemarketing to attempt to sell National Securities services.

27.     This included "cold calls" to individuals, made without any prior relationship, to sign up new business.

28.     This business plan continued after the Plaintiff filed this case, and the Plaintiff was included in these "cold calls", receiving such calls on February 10, 16, 25 (twice), February 26, February 29, March 2, and March 3 of 2016 initiated by Mr. John Verga[5].

---

[2] Per FINRA, Alfred W. Serbo, Jr., CRD # 1203201 is currently employed by Aegis Capital Corp, CRD # 15007 as of January 23, 2017.
[3] "Ed Turner" was the name of the caller stated to Plaintiff in two calls.  On information and belief this was Corbin Godfrey, CRD # 6102122, using an unregistered fictitious name.
[4] Per FINRA, Eric Scheetz, CRD # 6069786, is employed by National Securities Corp., CRD # 7569.
[5] Per FINRA, John Verga, CRD # 2366662, was employed by National Securities Corp., CRD # 7569.

29.     Each of these calls are belived to have involved the Red Bank, NJ branch of National Securities trying to sell the Plaintiff goods and services.

30.     Plaintiff is not a customer of Defendants, and has not provided Defendants with his personal information or telephone number for solicitation purposes.

31.     Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up, they were charged for the calls and their privacy was improperly invaded.

32.     Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

### *National Securities liability for the telemarketing conduct of Shampan Lamport and Sharpco International*

33.     National Securities is a "person," as defined by 47 U.S.C. § 153(39).

34.     For more than 20 years, the Federal Communication Commission has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

35.     In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.*

36.     On May 9, 2013, the FCC released a Declaratory Ruling reiterating that a corporation or other entity that contracts out its telephone marketing "may be held vicariously

6

liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[6]

37. In that Order, the FCC instructed that sellers such as National Securities may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

38. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

39. The FCC has rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 n. 107.

40. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be

---

[6] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

28  FCC Rcd at 6592 (¶ 46).

41. National Securities expressly authorized Shampan Lamport and Sharpco to sell their goods and services knowing that Shampan Lamport and Sharpco would do so through telemarketing.

42. National Securities is also liable because of the thorough guidelines it directs its agents and offices to follow for generating new business.

43. National Securities knew (or reasonably should have known) that its agents were violating the TCPA on its behalf, and failed to take effective steps within its power to force the telemarketer to cease that conduct. Any reasonable seller that accepts telemarketing leads would, and indeed *must*, investigate to ensure that those calls were made in compliance with the TCPA.

44. In fact, National Securities was already being sued in this lawsuit when Sharpco was making the telemarketing calls that contacted the Plaintiff.

45. National Securities also draped with Shampan Lamport and Sharpco with apparent authority to engage in the telemarketing conduct on their behalf.

46. During one of the calls, the Plaintiff was given the website, www.NationalSecurities.com.

47. That website is owned and operated by National Securities.

8

48. During another two of the telemarketing calls, the Plaintiff was also given a telephone number of (646) 292-4183, for the calling party.

49. That number is the phone number for National Securities employee, Corbin Godfrey.

50. In fact, after Mr. Charvat initially wrote to National Securities requesting that they stop making calls to his number that is listed on the National Do Not Call Registry, National Securities responded by making the following statements:

- "our records indicate that calls were made to your stated number."
- "we have discussed the matter with the aforementioned Mr. Corbin[7] and came to the conclusion that he made the calls from a telephone which is connected to the National Securities Corporation 'system'"
- "we have no record of any consent given to us by you to allow us to make telemarketing calls."
- "I would like to advise you that we have added your number to our internal 'do not call' system."

51. Furthermore, Sharpco had access to National Securities proprietary computer systems including the ability to (1) enter client transaction (buy or sell) information and (2) review passed payments received from National Securities, as well as customers acquired for National Securities.

52. Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

---

[7] Corbin William Godfrey, CRD # 6102122.  See also the footnote above regarding Mr. Godfrey's registration.

9

## Class Action Allegations

53. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

54. The class of persons Plaintiff proposes to represent is tentatively defined as:

<u>NATIONAL DO NOT CALL CLASS</u>

All persons within the United States whose phone numbers were registered on the Do Not Call Registry for more than 30 days, and who, within the four years before the filing of the initial Complaint, through the date of class certification, received more than one telemarketing call within any twelve-month period from, or on behalf of, either Defendant.

<u>INTERNAL DO NOT CALL CLASS</u>

All persons within the United States whose phone numbers were registered on the National Securities Do Not Call Registry for more than 30 days, and who, within the four years before the filing of the initial Complaint, through the date of class certification, received more than one telemarketing call within any twelve-month period from, or on behalf of, either Defendant.

55. Excluded from the Classes are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family. Collectively, they are referred to as the "Classes".

56. The Classes as defined above are identifiable through phone records and phone number databases.

57. The potential Classes members number at least in the thousands. Individual joinder of these persons is impracticable.

58. Plaintiff is a member of the Classes.

59. There are questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

    a. Whether Defendants violated the TCPA by calling individuals on the National Do Not Call Registry;

    b. Whether Defendants violated the TCPA by calling individuals on National Securities Internal Do Not Call Registry;

    c. Whether Defendants placed calls without obtaining the recipients' prior express invitation or permission for the call;

    d. Whether the Plaintiff and the Classes members are entitled to statutory damages as a result of Defendants' actions.

60. Plaintiff's claims are typical of the claims of Classes members.

61. Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the Classes, he will fairly and adequately protect the interests of the Classes, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

62. The actions of the Defendants are generally applicable to the Classes as a whole and to Plaintiff.

63. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

64. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

65. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

### Legal Claims

### Count One:
### Violation of the TCPA's Do Not Call provisions

66. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

67. The Defendants violated the TCPA by (a) initiating telephone solicitations to persons whose telephone numbers were listed on the Do Not Call Registry, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

68. Moreover, Defendants failed to establish and implement, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the TCPA.

69. The Defendants' violations were willful and/or knowing.

### Count Two:
### Violation of the TCPA's Internal Do Not Call List Requirement

70. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

71. It is a violation of the TCPA to make a telephone solicitation to any person that has asked not to receive such calls. 47 C.F.R. § 64.1200(d)(3).

72. Telemarketers like the Defendants must honor a do-not-call request immediately. In its July 3, 2003, Final Order implementing 47 C.F.R. § 64.1200(d)(3), the FCC explained:

> We note that the Commission's rules require that entities must record company-specific do-not-call requests and place the subscriber's telephone number on the do-not-call list at the time the request is made.
>
> Therefore, telemarketers with the capability to honor such company-specific do-not-call requests in less than thirty days must do so. We believe this determination adequately balances the privacy interests of those consumers that have requested not to be called with the interests of the telemarketing industry.
>
> Consumers expect their requests not to be called to be honored in a timely manner, and thirty days should be the maximum administrative time necessary for telemarketers to process that request.

*Re: Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278 18 FCC Rcd. 14,014, 14,069, ¶ 94 (July 3, 2003).

73. A private right of action is available for consumers who have received more than one call within a twelve-month period, in violation of FCC regulations like 47 C.F.R. §64.1200(d)(3). 47 U.S.C. § 227(c)(5).

74. The Plaintiff was placed on the Defendants' Internal Do Not Call list on or before September 20, 2012. However, more than 30 days following that time, he received more than one telemarketing call from the Defendants.

75. The Defendants' violations were negligent and/or knowing.

## Relief Sought

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

1. Injunctive relief prohibiting Defendants from calling telephone numbers that are on the Do Not Call Registry or the Internal Do Not Call Registry, pursuant to the TCPA applicable regulations and implementing orders.

2.	That Defendants, and their agents, or anyone acting on their behalf, be immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members.

3.	That the Court certify the claims of the named plaintiff and all other persons similarly situated as class action claims under Rule 23 of the Federal Rules of Civil Procedure.

4.	That the Plaintiff and all class members be awarded statutory damages of $500 for each negligent violation of the TCPA, and $1,500 for each knowing violation.

5.	That the Plaintiff and all class members be granted other relief as is just and equitable under the circumstances.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

PLAINTIFF,
By his attorneys

/s/ Brian K. Murphy
Brian K. Murphy (0070654)
Jonathan P. Misny (0090673)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH  43215
(614) 488-0400
(614) 488-0401 *facsimile*
E-mail: murphy@mmmb.com
        misny@mmmb.com

Edward A. Broderick
Anthony I. Paronich
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA 02110
(617) 738-7080
(617) 314-7783 *facsimile*

Matthew P. McCue
The Law Office of Matthew P. McCue

1 South Avenue, Suite 3
Natick, Massachusetts 01760
(508) 655-1415
(508) 319-3077 *facsimile*
mmccue@massattorneys.net